Mr. Discant, right? Yes. Good morning, Your Honors. May it please the Court. I'd like to reserve two minutes for rebuttal, if I may. Keep around the clock. My name is Edward Discant. I represent Intervenors Treo Asset Management and Treo Noel Gp. Your Honors, this case comes before you from what we would submit as a clear-cut abuse of Section 1782 and discovery obtained pursuant to 1782. And despite the fact that the district court was presented with evidence of conduct that virtually every circuit court to look at it has said warrants judicial intervention, the district court failed to take any action whatsoever. I understand the facts here are a little bit complicated, and so I thought it might be helpful to just set the stage for that abuse by presenting to you what we presented to the district court, which is that the lit — Your Honor, in our interpretation of Rule 60b-2, new evidence is only evidence that existed at the time of the original judgment. Correct, Your Honor. I think your new evidence maybe doesn't qualify. Can you address that, please? Absolutely, Your Honor. And I think there are two different ways of thinking that. The first is that one of the arguments we made at the time that the petition was filed was that we assumed Petitioner was going to do exactly what it did, which is use it in — in proceedings other than the two it had identified in the case. So our position was that the events that happened afterwards provided evidence to support the claim we had made beforehand, which I — which does fit within the context of 60b. But doesn't that — doesn't that actually buttress the idea that that evidence existed at the time of the original filing? It was unavailable to us because the only way that we could have developed it was to directly inquire of our adversary, which, of course, we couldn't do. And that's why, through due diligence, we couldn't discover it. But there's a second reason I think the Court can get to the same point, which is that in this Court's decision in Krapunev, which admittedly was not directly in the context of a motion for reconsideration, this Court directed a district court to reconsider the factors applicable to a 1782 proceeding where the facts surrounding the petition had materially changed. That's effectively exactly what we asked the district court to do here, which is to that the facts surrounding the grant of the petition had materially changed, and we wanted the district court to reconsider its grant in light of that. Well, let me ask you this. You were concerned before the Court ruled that the evidence would be disclosed and shared with other parties. Correct. Then you entered into a protective order. You had a chance to fix it then. So I'm glad you raised that. We should talk about the second issue, which is the protective order. As interveners, TRAO Asset Management and TRAO No-LGP were not invited by the parties and did not participate in the negotiation of the protective order. With that said, we saw the protective order when it was entered, and we believe that it was sufficient to capture what we understood to be Petitioner's representation to the Court. The language of the protective order is a little bit ambiguous, but as Respondents noted below, they also believed that the protective order would operate in a fundamental different way. The district court didn't reject those claims. She just said she didn't care. You're sophisticated. It's not my problem. And I would respectfully submit that has absolutely nothing to do with whether or not good cause existed to modify the protective order. But TRAO had nothing to do with that protective order. What's that? TRAO had nothing to do with it. It had no input. That's exactly right, Your Honor. There is no evidence to the contrary in the record. And to the contrary, Respondents submitted a declaration in which Respondent, the State of Oregon, talked about the manner in which the protective order was negotiated between Respondent and Petitioner. And moreover, Respondents put in an affidavit before the district court talking about how certain changes were made by Petitioner and clearly misunderstood by Respondent. And so the ---- Kennedy, I thought that the protective order was negotiated on TRAO's part. Isn't that correct? So in part, Your Honor, it was negotiated on behalf of the fund. The fund's confidential information, which is whom TRAO represents. But because TRAO is not a party to the proceedings, TRAO is not invited to the meet and confer sessions back and forth. Kennedy, I understand that, but you're smart people. You probably communicated with the lawyers that were negotiating this, right? So, Your Honor, we certainly took a look at the draft protective order when it was posted on the docket. But again, I want to make very clear that both interveners and Respondents misconstrued a provision that Petitioner had changed. And in fairness to us, there is ambiguity in the provision. The provision in question talks about the universe of people that documents can be shared with and creates a broader category of persons. The understanding at the time was those broader category of persons were people who would need to have access to the documents because, for example, they were witnesses and would need to be ---- need to put in witness statements. And by the way, that is one of the things that Petitioner relied on. That is fundamentally different than giving documents to a witness and saying, hey, witness, you're being sued in a different country in a different matter that we're not a party to, you can use these documents there, too. No one on the ---- from either Respondents or Petitioner understood that to be what the protective order allowed. Again, I ---- my point is this. Your sophisticated lawyers, the protective order was intended for the benefit of trade. Your lawyers talked to your people representing yourself before the court basically in crafting protective order. You saw it undoubtedly had some input in it. The fact that it didn't contain everything you wanted doesn't change the fact that this was not a virgin document about which you knew nothing, right? There is nothing in the record that suggests Trejo had an opportunity to review it before it was posted in the docket, Your Honor. And there is evidence in the record that suggests that Respondent, who negotiated with Petitioner, shared the same misunderstanding that Trejo had, which is to say even had Trejo had the discussions Your Honor is contemplating, Trejo would have landed in the same place, which is the same misunderstanding. But there's a second fundamental problem with this argument that Petitioner has advanced, which is there is nothing in the law of this Court that suggests a good-faith misunderstanding by one party negates good cause to modify a protective order. The whole purpose of the protective order, the findings in entering the protective order, was that documents being produced here contain confidential information of the fund. Nothing about that finding has changed. And so I would submit that the inquiry the district court should have engaged in is whether the protective order is sufficient to meet that purpose. Both Respondent and Petitioner told the --- excuse me, both Respondent and Intervenor told the district court the answer to that question was no. And to be very clear, the district court never made a contrary finding. That's the real error here. The district --- Robertson, I'm kind of confused because if that's really what was intended, and you have lawyers, I'm sure were very good lawyers, negotiating this document, how do they not get it right? Your Honor, there is an affidavit in the record from counsel for Respondents who are the ones negotiating the protective order indicating that they didn't understand the nuance I just laid out for Your Honor, which is that documents could be used, could be shared with these interested parties for purposes of witness statements, for example, for purposes of preparing someone for testimony. That is fundamentally different than giving it to them and saying, you've been sued in a different country in unrelated litigation. You can use these documents there. No one from Respondents understood as much. There is no evidence to the contrary. And so, again, the question is, why wouldn't the district court take action under those facts to modify the protective order? The modification that Trejo sought is what in standard commercial litigation terms is commonplace. That is, the party receiving the documents can use them itself for purposes of the That's in virtually every protective order, and that's the modification that was sought. It was not sort of the things that you allege is that the district court abused its discretion in finding that it was not misled. I find that unique because in the district court, the best judge of whether it was misled. So, Your Honor, I do want to reserve time, but I also want to answer your question. May I answer your question? Please. So, Your Honor, I think the answer to that is that the district court, with great respect, didn't take seriously or meaningfully engaged with the evidence that Trejo presented. The district court made findings in denying the motion for reconsideration that are very difficult to reconcile with the record. For example, the district court made the finding that in granting the petition, it didn't limit the use of documents to two particular proceedings. But that's doubly wrong. First, in the initial order granting the petition, the district court, as it was required to, made a series of specific findings, both under the statute and under Intel, that were laser-focused on the two proceedings. It could not have made those findings had it considered the broader range of litigations here. That's the first error. The second error is the district court then entered a protective order, which, you know, irrespective of how you read it, imposes some limitations on the manner in which documents were being produced. And so, therefore, it was not the case that the district court had never considered imposing limitations with respect to the manner in which the documents would be used.  You have very little time left, but you have some. Do you want to save that? No. I'd like to save my two minutes if I had to. Okay. Very good. All right. So now, Ms. Do you say Blatchatsky? I'm sorry. I probably got that wrong. You can just call me Tara, Your Honor. Your Honor, I can confirm that opposing counsel is a very good lawyer, indeed. And we find it difficult to believe that no one appreciated that what the district court found to be an entirely unambiguous protective order allowed exactly what it was used for. That is, we acted in reliance on a protective order that expressly permitted the use of documents in proceedings that related to the events described in the petition filed in support of 1782 evidence. It allowed us to give those documents to other interested parties, and it did so in a completely open way. Trao had multiple opportunities to object to this protective order. In fact — Well, let me ask you this. When the protective order is being negotiated, did Trao exhibit its concerns that it's exhibiting here in court today? Trao did not, to my knowledge, appear on the e-mail chains. I have no knowledge, and there's nothing in the record to show that Trao didn't receive drafts on the back end of the negotiations. I have no knowledge about whether Oregon shared those drafts with Trao. What we do know is that when the stipulated order was filed, the district court rejected it and said, you haven't shown me good cause. That resulted in Oregon filing an unopposed motion for a protective order that noted that Trao had expressly requested Oregon to take steps to protect confidential information that may be included in the production. That's at 271 of the record. Now, the only good cause offered for the protective order at all was that there may be confidential information in the production that should not be disclosed to the public. You will note that nowhere in the record has anyone claimed that any confidential information, whether Trao's or Oregon's, has been disclosed to the public. That is, the purpose of the protective order is being met. Everything's being protected. None of the proceedings in which this information has been used are open to the public. Luxembourg has a different system. The U.K. has a different system. So the protective order's being complied with. No one's argued to the contrary. What's happened is that Trao has used evidence, its new evidence, of an intent to abuse the statute is merely evidence of our compliance with an agreed protective order. That doesn't suffice under Rule 60B, as Your Honor observed in arguing with my opponent. Let me ask you this. It's slightly different. As you know, the Southern District of New York recently granted a partial grant of Trao's motion to quash your 1782 petition to kill a contemplated future fraud claim. What role, if any, should that play in our deliberations? None whatsoever, Your Honor. We believe, with all due respect to the Southern District of New York, that that decision was incorrect. What the Court observed there is ambiguity and ambivalence, really, about whether our initial application showed a commitment to file the fraud claim. What that declaration said is that we will file the claim. There was no ambivalence at all. The Court also cited the fact that we had not filed the fraud claim for which we applied for evidence in the 19 months, and the motion to quash was pending, as evidence that we were not going to file it. I have problems with that logic, but unlike our opponents, we don't have endless resources to appeal every adverse decision. What we have done is decided not to appeal. I can say that the Court could take judicial notice that in the underlying proceedings of this case, this case was just closed last Wednesday at docket entry 94. Ten days ago, we completed discovery in this matter. We took the deposition of Mr. Michael Lingdon. We rush-ordered the transcript, and the fraud claim, we will prove the Southern District wrong because the fraud claim will be filed shortly. Kennedy. What actual use of the Oregon discovery have you used, excuse me, made in the veto right litigation? In the veto right litigation, I believe that in terms of what has been filed, there have been documents put on the record, maybe two documents put on the record. Right now, that litigation, I believe, is yet to reach the merits. And so in assessing whether documents are for use in a 1782 proceeding, the question is not whether the documents are admissible, but whether they can be used in preparation of the case. So when that case proceeds to the merits, there is plenty of evidence in the document production that we have received that will help us. For instance, the Master Luxco case, that's the veto right litigation, it accuses my client of improperly changing the bylaws to require unanimity among shareholders. It's that that was a fraud. Evidence suggests, as we've long suspected, that Trao and others knew about that amendment and ratified it two times. It also suggested that the amendment was made for purposes that were useful to Trao. That is, if there was unanimity required, that our creditors could not then call in loans saying you were required to maintain a continuity of control. There is a confidentiality order in place, so I don't want to disclose the underlying evidence, but there are documents that show that the unanimity clause was, in fact, useful. So on the merits, when we get to that briefing, the documents will be used extensively in the Master Luxco litigation. I did want to say a word about standing. I think Trao has made vague references to its own confidential information in its opening briefing and a little bit on the motion to stay. Trao has yet to adduce any evidence that its own confidential information is indeed at stake. The cases it cited in its reply brief are inapposite. One of them was from the Sixth Circuit, and it concerned a gerrymandering case. And in that case, the Court said, you have a protective order in place. There's nothing to worry about, just as we do here. In another case, it was the 100 record case. That was about a case where an individual was required to supply information to the government that would have been discoverable via FOIA. That is about public disclosure. Again, irrelevant here. And in the third case, harm from public disclosure, it was concerning misappropriation of confidential information, and Trao alleges that that's on all fours here. It's not. In that case, the harm from the misappropriation of information was $235 million in damages from stock manipulation. So there are no cases at all where disclosure of confidential information, subject to a protective order, really because it's used against you, gives you standing to claim harm. So Trao has not adduced an injury anywhere. It says that it has standing to challenge the lawfulness of the 1782 order. That is true at the outset. But as the district court's opinion makes clear, Trao's problem is not with this ruling. It's with the original ruling. It never sought a limitation on the use of the documents. It's very normal in 1782 litigation at the outset to say, we are concerned that the documents might be used elsewhere. If there's a party to the foreign litigation that you're seeking the discovery from here, you should impose that kind of limitation in the order. That wasn't done here. The district court understood what it was doing, and it provided a fulsome record, adducing its thorough understanding. Trao indicates that the district court applied the wrong legal standard. I just want to say a word about that. Trao, in its underlying briefing, I believe that is at 146 and 147 of the record, and 151 and 152, talks about introducing evidence that would change the result of the case. And in so doing, it was talking about the motion for reconsideration standard, prong two. I'm showing you evidence that is the misuse of the documents based on the agreed order that would have changed your decision at the beginning, Your Honor. What the Court cited in its opinion, where it got to the motion for reconsideration, was page 1009 of Glock. And in that part of Glock, the Court had said, if you come up with some kind of subterfuge, some kind of evidence that a Petitioner is seeking 1782 for the wrong reason, well, that's a reason not to grant the 1782 in the first place. And if you have evidence of that kind of chicanery, you should bring it to our attention. So what the Court was saying below was that you haven't given me the evidence that would have changed the result of my decision. The Court wasn't confused. The Court cited the proper motion for reconsideration standard at the outset. So without finding any evidence that the Court had reached an illogical or implausible conclusion that there are no inferences in the record, we encourage you to affirm. Thank you.  Do my colleagues have additional questions?  Thanks. Very well. Thank you. Okay. Counsel, you have a little rebuttal time. Thank you, Your Honor. I just want to briefly make a couple of points. On the issue of standing, I know you didn't ask any questions of me of it. I think Ninth Circuit law is very clear that a party against whom the documents are going to be used has standing to challenge the abuses, which is both of the issues before you. You had asked Judge Smith questions about the use of confidential documents. There have been numerous uses of documents that were designated confidential under the protective order. Their designation has never been challenged. That is the use that is at issue here. You asked about the SDNY proceedings. The SDNY proceedings, I would submit, highlight the lack of attention, with all due respect, the district court in Oregon gave to this, because the district court in the Southern District wrote a 68-page opinion in which he parsed these issues much more and limited relief far more than the district court did in Oregon. And the last thing I wanted to note is I would submit to you that this issue of timing of whether or not Trejo should have raised its hand and raised objections is a red herring, because if Trejo had done this the first time that the protective order hit the docket, the objections would have been the same from the other side. The question is what the district court would have done to resolve them. And assuming the district court had shown the same lack of concern for these issues then, we would be back before you on an appeal of the protective order as opposed to an appeal to modify the protective order. The question is whether good cause exists to modify it, and I submit to you it did.  Very well. Other questions by my colleagues? Go ahead. I have one more question. One exclusion. I'm trying to understand. Are you looking for an order that would claw back the documents given to the third party, or do you just want to have them protected prospectively? So, Your Honor, I think it depends on which of our motions you grant. If you grant the motion to modify the protective order, we would ask them to be modified prospectively. If you granted the motion for reconsideration or depending on how the protective order was modified, they might need to be clawed back. All right. Thank you. Thank you. Thanks to both counsel for your argument. The case of Nobel Pena Capital Partners versus Trio Asset Management is submitted.
judges: THOMAS, SMITH, Rayes